## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF ILLINOIS
## ROCK ISLAND DIVISION

| | | |
|---|---|---|
| **CLIFFORD W. SHULL,** | ) | |
| | ) | |
| **Petitioner,** | ) | |
| | ) | |
| **v.** | ) | **Case No. 01:11-4033-SLD** |
| | ) | |
| **NEDRA CHANDLER, Warden of the** | ) | |
| **Dixon Correctional Center,** | ) | |
| | ) | |
| **Respondent.** | ) | |

## O R D E R

Petitioner Clifford Shull, a prisoner in the custody of the Illinois Department of Corrections, brings this petition *pro se* seeking habeas corpus relief pursuant to 28 U.S.C. § 2254. (West, Westlaw through PL 113-163, approved 8/8/14). For the reasons set forth below, the petition is denied and the Court declines to certify any issues for appeal pursuant to 28 U.S.C. § 2253(c)(2) (West, Westlaw through PL 113-163, approved 8/8/14).

## BACKGROUND

Factual determinations by state courts are presumed to be correct in federal habeas corpus proceedings; Shull has the burden of rebutting that presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *Vasquez v. Hillery*, 474 U.S. 254, 258 (1986); *Sumner v. Mata*, 449 U.S. 539, 545–47 (1981). Shull does not challenge facts established in the prior state court proceedings. Accordingly, the Court sets forth the following relevant facts found in the opinions concerning Shull's direct appeal and his post-conviction proceedings. The following testimony was elicited at Shull's jury trial:

[On November 28, 2001, Shull was involved in an accident while driving a truck that resulted in the death of two individuals. He was later charged with reckless homicide for driving his truck in a reckless manner while under the influence of alcohol.] The responding patrol sergeant, Keith Charvat, testified that when he arrived at the accident scene, [Shull] was standing on the driver's side of the truck and told Charvat that he was the driver. Sarah Underwood, a teller at a drive-through window of a credit union located near the accident scene, testified that she saw a man driving the truck and a woman sitting in the passenger seat. Debbie Wass testified that she saw [Shull's] truck in her front yard after hearing the collision, and observed [Shull] standing on the driver's side of the truck and a female walking around the back of the truck from the passenger side. A responding firefighter testified that he observed [Shull] standing on the driver's side of the truck. According to this witness, [Shull] said that he was driving and was suffering from chest pains caused by his chest hitting the steering wheel. Another responding paramedic testified that [Shull] also told him that [Shull] was the driver. Finally, the emergency room physician testified that [Shull] told him that he was the driver of the vehicle. The doctor also testified that he noted that [Shull] had tenderness in the upper left quadrant of his abdominal area.

Resp't Ex. H at 2, ECF No. 11–9.

During the accident, Leslee Hildebrandt also was an occupant in [Shull's] pickup. There was conflicting testimony concerning whether [Shull] or Hildebrandt was driving the truck during the accident.

Charvat stated that when he arrived, Hildebrandt was standing by the rear of the truck. Charvat observed that "[j]ust in front of the right rear tire on the passenger side of the truck was a ***half pint bottle which was half full of *** whiskey."

. . .

Hildebrandt testified for [Shull]. She stated that it was she, and not [Shull], who was driving when the accident occurred. On cross-examination, she admitted that after the accident she told a police officer that [Shull] was the driver and she was the passenger.

By way of impeachment, Hildebrandt admitted that in 1996 she was convicted of prostitution in Iowa. The record does not contain a copy of Hildebrandt's conviction.

During the jury instruction conference, the judge asked the parties, "[I]n regard to a conviction for the offense of prostitution over in the State of Iowa, the parties stipulate, is that correct, that this is an offense which is

> punishable for up to two years in jail; is that correct?" [Shull]'s attorney
> replied, "That's correct, Your Honor. It is classed as an Aggravated
> Misdemeanor. Being licensed in Iowa[,] I'm aware of the fact that *** an
> aggravated misdemeanor would carry a penalty range of up to two years
> ***."

Resp't Ex. A at 4, 9; ECF No. 11–2.

> During trial, the court admonished Shull regarding his right to testify as follows:

> You have a choice to make. Those choices are you can either testify or
> you don't have to testify, the choice is entirely up to you. I have no
> preference one way or the other. But you do have a constitutional right to
> testify if you wish to do so. Similarly, you have a constitutional right not
> to testify. You have the right to remain silent if that's what you want to
> do. The choice is yours, not mine.

Resp't Ex. H at 2–3. When the court questioned Shull whether he was going to testify,

Shull responded, "No." *Id.* At the conclusion of the trial, the jury found Shull guilty and

the court sentenced him to two concurrent 24 year terms of imprisonment. *Id.* at 3.

Shull obtained direct review in the Illinois Court of Appeals and raised the

following claims: (1) the State failed to prove Shull guilty beyond a reasonable doubt

because Hildebrandt testified that she was driving the truck at the time of the accident;

(2) the trial court erroneously denied Shull's motion to suppress; (3) the trial court erred

in admitting Hildebrandt's prior prostitution conviction for impeachment purposes; (4)

trial counsel was ineffective for (a) failing to object to the admission of Hildebrandt's

prior conviction, (b) failing to retain an accident reconstruction expert to rebut the State's

expert; (5) the trial court erred in admitting the State's accident reconstruction expert; and

(6) Shull's sentence was excessive. Resp't Ex. B at 7, ECF No. 11–3. The appellate

court affirmed Shull's conviction, stating:

> The record indicates that Hildebrandt had been convicted within 10 years
> of her testimony and that the offense was punishable by more than one
> year of imprisonment. The probative value of Hildebrandt's conviction

was not substantially outweighed by a danger of unfair prejudice to [Shull]. The trial court did not abuse its discretion by admitting this evidence to impeach Hildebrandt's credibility. Furthermore, evidence of [Shull's] guilt was overwhelming, and therefore, any error in admitting this evidence was harmless.

. . .

It would have been pointless for [Shull]'s counsel to object to the admission of Hildebrandt's prior conviction. As we discussed above, this evidence was clearly admissible for impeachment purposes. Thus, [Shull] has failed to show that he was prejudiced by his counsel's failure to object.

The record shows that during the jury instruction conference, [Shull]'s counsel merely answered affirmatively that the parties were stipulating that Hildebrandt's conviction was for an offense punishment by imprisonment for up to two years in the state of Iowa. [Shull] does not contend that his counsel misstated the law. Stipulating to the statutory sentencing range of an offense in another state, which is a matter of public record, could not have been prejudicial to [Shull]. Because [Shull] has failed to show that his case was prejudiced, we rule that his trial counsel was not ineffective by failing to object to testimony concerning Hildebrandt's prior conviction.

Resp't Ex. A at 13, 16–17. Notably, Justice Slater dissented, stating that he believed the trial court erred when in admitting Hildebrandt's prior conviction because the danger of unfair prejudice to Shull "clearly outweighed any probative value of the conviction." *Id.* at 23. Shull then filed his petition for leave to appeal ("PLA") to the Illinois Supreme Court, asserting that: (1) the trial court erroneously admitted into evidence Hildebrandt's prior prostitution conviction; and (2) trial counsel was ineffective for assisting the State in bringing Hildebrandt's prior conviction before the court. *See* Resp't Ex. E at 4–8, ECF No. 11–6. The Supreme Court denied the PLA on March 25, 2005. *See* Resp't Ex. F, ECF No. 11–7.

On October 5, 2005, Shull filed his *pro se* post-conviction petition and an amended petition on February 23, 2006, with the Circuit Court of Rock Island County.

Altogether, Shull raised four claims: (1) he was denied effective assistance of appellate counsel because his counsel's arguments on direct appeal required presenting evidence outside of the trial record, and because counsel failed to argue that trial counsel improperly presented inconsistent theories of the defense; (2) Shull was denied effective assistance of trial counsel in that counsel failed to investigate and present evidence to refute the State's evidence and corroborate Shull's witness; (3) newly discovered evidence outside the trial record corroborated Hildebrandt's testimony that she was the driver of the truck; and (4) Shull was denied the right to testify on his own behalf. Resp't Ex. N at 82–90, ECF No. 11–19. The trial court held an evidentiary hearing on September 18, 2007, but ultimately denied Shull's post-conviction petition. Resp't Ex. G at 1, 10, ECF No. 11–8. Shull appealed, arguing that the trial court denied him the right to testify and that his trial counsel was ineffective for advising him not to testify. Resp't Ex. H at 4–5. The appellate court affirmed, finding that (1) the trial judge clearly admonished Shull regarding his right to testify, that Shull did not inform the court that he wished to testify, and that Shull admitted that he did not testify nor asked to testify; and (2) nothing in the record indicated that Shull was misinformed by trial counsel as to the consequences of testifying on his own behalf and that counsel's advice did not fall below an objective standard of reasonableness so as to constitute ineffective assistance. *Id.* at 4–6.

Shull filed a post-conviction PLA arguing that his right to testify was violated because his trial counsel improperly persuaded him not to testify. Resp't Ex. I at 5, ECF No. 11–10. The Illinois Supreme Court denied the PLA on January 26, 2011. Resp't Ex. M, ECF No. 11–14. On April 28, 2011, Shull filed his habeas petition and was

subsequently granted leave to file an amended petition on January 11, 2012. The matter is fully briefed and this order now follows.

## DISCUSSION

Shull presents the following issues for the Court's review in his amended habeas petition: 1) whether the trial court erred in admitting the impeachment evidence against Hildebrandt; 2) whether Shull's trial attorney was constitutionally deficient because he failed to prevent the admission of the impeachment evidence against Hildebrandt; and 3) whether Shull's right to testify was violated due to trial counsel's misinformation, such that the trial court's dismissal of Shull's post-conviction petition was an unreasonable application of clearly established constitutional law. Am. Pet. at 18, ECF No. 8.

## I. LEGAL STANDARD PURSUANT TO 28 U.S.C. § 2254

Shull's habeas petition is governed by the provisions of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214. *See Lindh v. Murphy*, 521 U.S. 320, 322–23 (1997); *Benefiel v. Davis*, 357 F.3d 655, 659 (7th Cir. 2004). The AEDPA allows this Court to grant a petition for a writ of habeas corpus by a petition such as Shull only when he is in custody "in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). Generally, a petitioner is required to exhaust all of his available state court remedies before seeking a writ of habeas corpus in federal court. *See* 28 U.S.C. § 2254(b)(1)(A); *Lieberman v. Thomas*, 505 F.3d 665, 669 (7th Cir. 2007). This requires "the petitioner to assert his federal claim through one complete round of state-court review, either on direct appeal of his conviction or in post-conviction proceedings." *Lewis v. Sternes*, 390 F.3d 1019, 1025–26 (7th Cir. 2004) (noting that the petitioner must raise his claims "at each and

every level in the state court system, including levels at which review is discretionary rather than mandatory," to exhaust those claims); *Brown v. Watters*, 599 F.3d 602, 609 (7th Cir. 2010). "The relevant decision for purposes of [this Court's] assessment under AEDPA is the decision of the last state court to rule on the merits of the petitioner's claim." *Eichwedel v. Chandler*, 696 F.3d 660, 671 (7th Cir. 2012) (internal quotation marks and citation omitted). If the petitioner fails to exhaust his state court remedies and the opportunity to raise that claim in state court has lapsed, the petitioner has procedurally defaulted his claim, and a federal court is precluded from reviewing the merits of his habeas petition. *Lieberman*, 505 F.3d 665, 669–670.

Where the state court adjudicates the merits of a habeas petitioner's claim, a federal court may grant habeas corpus relief if the state court decision: "(1) … was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States; or (2) was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding." 28 U.S.C. § 2254(d). This is a "difficult to meet and highly deferential standard for evaluating state-court rulings, which demands that state-court decisions be given the benefit of the doubt." *Cullen v. Pinholster*, 131 S. Ct. 1388, 1398 (2011) (internal citations omitted). The petitioner carries the burden of proof of establishing either element. *Id.*

A decision by a state court is "contrary to" clearly established federal law if it applies a rule different from that established by the Supreme Court, or reaches a different outcome than that of the Supreme Court on a set of materially indistinguishable facts. *See Bell v. Cone,* 535 U.S. 685, 694 (2002); *Kamlager v. Pollard*, 715 F.3d 1010, 1015

(7th Cir. 2013). A state court engages in an "unreasonable application of" federal law if it identifies the correct legal standard articulated by the Supreme Court, but applies it in an unreasonable manner. *See Williams v. Taylor,* 529 U.S. 362, 407 (2000). The state court's decision must be "objectively unreasonable," and not simply incorrect or erroneous. *Bell*, 535 U.S. at 694. Under the statute, federal courts must give "full effect" to state judgments that are consistent with federal law. *See Williams,* 529 U.S. at 383. This means applying a deferential standard of review under which state court rulings are given the benefit of the doubt. *See Woodford v. Visciotti,* 537 U.S. 19, 24 (2002). A decision "involves an unreasonable determination of the facts if it rests upon fact-finding that ignores the clear and convincing weight of the evidence." *Goudy v. Basinger*, 604 F.3d 394, 399–400 (7th Cir. 2010) (citing *Ward v. Sternes*, 334 F.3d 696 (7th Cir. 2003)).

## II. ANALYSIS

The Court is mindful that it must construe Shull's *pro se* petition liberally. *See Ward v. Jenkins,* 613 F.3d 692, 697 (7th Cir. 2010). However, with that deference in mind, and as set forth more fully below, the Court cannot consider Shull's first claim concerning whether the trial court erred by admitting proof of Hildebrandt's prior prostitution conviction because it does not have a federal constitutional basis. Moreover, Shull procedurally defaulted this claim because he failed to raise any federal constitutional argument in his direct appeal brief or petition for leave to appeal. Shull's remaining two claims – that trial counsel was constitutionally deficient because he allowed Hildebrandt's prior prostitution conviction to be admitted and that trial counsel improperly coerced Shull into waiving his right to testify – are without merit.

### A. Whether the trial court erred by unreasonably applying case law when it admitted the impeachment evidence against Hildebrandt

Shull argues that the trial court's admission of impeachment evidence against his key witness, Hildebrandt, was premised upon the court's unreasonable interpretation of case law, Am. Pet. at 19–22, ECF No. 8, and "an unreasonable determination of facts,"[1] *id.* at 22. To that end, Shull claims that "[a]bsent the unfair prejudice, the jury could have assessed the true issue in the case, whether [Shull] was actually driving the vehicle at the time of the crash." *Id.* (internal quotation marks omitted).

Shull's first claim is non-cognizable because it has no federal constitutional basis. In relevant part, Shull asks whether "the state court applied an unreasonable application in its ruling that admitting impeachment evidence of [Shull]'s key witness was proper." Am. Pet. at 36. However, Shull does not contend that the court's ruling constituted an unreasonable application of federal law or the Constitution. Furthermore, although Shull does not expressly characterize his first claim as a "due process" violation, the Court is mindful of its duty to construe *pro se* habeas corpus petitions liberally. *See Ward*, 613 F.3d at 697. However, unlike the petitioner in *Perruquet v. Briley*, 390 F.3d 505 (7th Cir. 2004), Shull does not "cite his constitutional right to a fair trial," *id.* at 512, in his amended petition. Nor does he allege facts supporting an argument that the court's rulings "offend[] some principle of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental," *Patterson v. New York,* 432 U.S. at 201–202

---

[1] Shull briefly contends that the court's admission of Hildebrandt's prior conviction "was obviously based on an unreasonable determination of facts." Am. Pet. at 22. However, his argument is entirely premised upon his belief that the trial court misinterpreted case law concerning whether a previous prostitution conviction is a proper basis for impeachment. *Id.* Because Shull fails to specify any facts that the trial court rested upon which ignored the clear and convincing weight of the evidence, his argument is waived. See *United States v. Irons*, 712 F.3d 1185, 1190 (7th Cir. 2013) ("Perfunctory and undeveloped arguments, and arguments that are unsupported by pertinent authority, are waived." (alteration and quotation marks omitted)).

(internal citations omitted).  The Court therefore concludes that Shull's first claim is not cognizable on his petition for federal habeas corpus relief.

Even if Shull had asserted a cognizable due process violation claim, this Court could not consider it because Shull never presented it as such in state court and therefore procedurally defaulted on the argument.  The procedural default doctrine will normally preclude a federal court from reaching the merits of a habeas claim when either (1) that claim was presented to the state courts and the state-court ruling against the petitioner rests on adequate and independent state-law procedural grounds, or (2) the claim was not presented to the state courts and it is clear that those courts would now hold the claim procedurally barred. *See Perruquet* 390 F.3d at 514 (citing *Coleman v. Thompson*, 501 U.S. 722, 735 (1991)).  Thus, when a habeas petitioner fails to fairly present to the state courts the claim on which he seeks relief in federal court and the opportunity to raise that claim in state court has passed, the petitioner has procedurally defaulted on that claim. *See Perruquet* 390 F.3d at 514.

Here, to the extent that Shull raises a due process violation claim, he did not fairly present it as such to the state courts, and the opportunity to raise that claim in state court has passed.  *Id.*  He failed to frame his evidentiary claim regarding Hildebrandt's prior prostitution conviction as a federal claim in his direct appeal.  Rather, Shull relied solely on state law and did not make any reference to federal constitutional rights, except for the following sentence: "[A]dmission of the conviction destroyed [Shull]'s character and his right to a fair trial."  Resp't Ex. B at 35.  Shull's post-conviction appeal is similarly deficient as he relied entirely on state law and made no reference to any violation of his federal constitutional rights, save for the following sentence: "Absent any relief, [Shull]

will remain in prison for the rest of his life notwithstanding his meritorious claim of actual innocence and the clear violation of his right to a fair trial that took place when Hildebrandt's conviction was presented to the jury." Resp't Ex. E at 8. The procedural default therefore bars this Court from reaching the merits of Shull's claim. Because Shull has made no effort to show "cause and prejudice" or a "miscarriage of justice", the procedural default stands and his first claim is denied. *Perruquet*, 390 F.3d at 514.

### B. Whether Shull's trial attorney was constitutionally deficient when he failed to prevent the admission of the impeachment evidence against Hildebrandt

The Court reaches the merits of Shull's second claim — that his trial counsel was ineffective for acquiescing to the admission of impeachment evidence against Hildebrandt — and finds that the appellate court's application of the *Strickland v. Washington*, 466 U.S. 668 (1984) standard was reasonable. This Court "will not fault counsel as ineffective for failing to advance a position under state law that the state appellate court said was meritless." *Lopez v. Thurmer*, 594 F.3d 584, 587 (7th Cir. 2010). The appellate court found that Shull could not show any prejudice stemming from his trial counsel's failure to object to the admission of Hildebrandt's prior conviction. Resp't Ex. A at 13, 16–17.

The Court finds nothing unreasonable about the appellate court's application of the *Strickland* standard. The appellate court properly noted[2] that it could resolve an ineffective assistance of counsel claim by only reaching *Strickland*'s prejudice prong. Because the appellate court correctly identified the *Strickland* standard, the only remaining question is whether the court's

---

[2] The appellate court cited *People v. Hall*, 194 Ill. 2d 305 (2000), which in turn relies on *Strickland* for its analysis. Resp't Ex. A at 16.

application of the standard was unreasonable. 28 U.S.C. § 2254(d)(1). The appellate court reasonably concluded, in light of its finding that Hildebrandt's prior conviction was clearly admissible and a matter of public record, that Shull could not show that his trial counsel was unreasonable nor could he show that the outcome would have been different had his counsel objected to the admission of the impeachment evidence. Resp't Ex. A at 15–16. The appellate court's conclusion that the outcome would be the same had trial counsel argued for the exclusion of Hildebrandt's prior conviction was not an unreasonable application of the *Strickland* standard, and therefore Shull's ineffective assistance argument fails on the merits.

### C. Whether Shull was denied his right to testify and whether his trial counsel's advice constituted ineffective assistance of counsel

In his third and final claim, Shull argues his trial counsel was constitutionally ineffective where he improperly coerced Shull not to testify at trial, thereby depriving Shull of his right to testify. According to Shull, he wished to testify and "[h]ad trial counsel fully explained what [Shull] was facing if he testified at trial, he would have testified on his own behalf." Am. Pet. at 25–26. Shull concedes that during the trial "[Shull] told the court that he did not wish to testify," *id*. at 25, and that "[he] was informed by the trial court that he possessed the right to testify in his own defense," *id*. at 27, but claims that "[he] misunderstood what the State could attack him with if he testified," *id*. at 25. To that end, Shull argues that a fair reading of his sworn affidavit and his testimony at the post-conviction evidentiary hearing makes "clear that [Shull] did not knowingly waive his constitutional right to testify," *id*. at 27, and that counsel

coerced him to do so by telling him that he would be attacked by the State with his past,"
*id*.

In evaluating this claim, the Court must determine whether the appellate court's analysis was either "contrary to" or an "unreasonable application of" federal constitutional law – namely, the *Strickland* ineffectiveness test. Under *Strickland*, Shull must show that his counsel's performance fell below an objective standard of competence and that there is a reasonably probability that, but for counsel's error, the result of the trial would have been different. *Strickland*, 466 U.S. at 690–695.

On post-conviction appeal, the appellate court observed that the record belied Shull's claim to the extent that Shull argued that the trial court denied him the opportunity to testify. The appellate court noted that, pursuant to *People v. Smith*, 680 N.E.2d 291 (Ill. 1997) and *People v. Youngblood*, 906 N.E.2d 720 (Ill. App. Ct. 2009), a conviction will not be reversed unless a defendant contemporaneously informed the trial court that he wished to testify. The appellate court determined that the trial judge clearly admonished Shull regarding his right to testify but that Shull did not inform the court that he wished to testify. Resp't Ex. H at 4. Finding no basis to credit Shull's claim, the court concluded that Shull was not denied his right to testify by the trial court. *Id.* at 4–5.

The appellate court next considered whether Shull's claim that his trial counsel improperly limited his right to testify, and that counsel was ineffective in that regard. The court properly set forth the *Strickland* standard and relied upon Illinois law concerning when counsel's advice not to testify will comprise ineffective assistance – namely, when the record indicates that counsel refused to allow a defendant to testify after rejecting counsel's advice. The appellate court determined that nothing in the

record indicated that Shull's trial counsel refused to allow him to testify but, rather, that Shull "admit[ted] that he took his counsel's advice and declined the opportunity to testify on his own behalf," *id*. at 5. Moreover, the appellate court concluded that the record did not support a finding that Shull was misinformed as to the consequences of testifying. The court determined that if Shull testified "he would have been subjected to an attack on his credibility on cross-examination [and that Shull's] intoxication at the time of the accident would have been a proper topic to attack the credibility of his testimony and the accuracy of his recollection at trial." *Id.* at 5–6. In so doing, the appellate court concluded that the advice of Shull's trial attorney did not fall below an objective standard of reasonableness, thereby dooming his ineffective assistance claim. *Id*. at 6.

Shull's argument that his trial attorney "misinformed him" that he would be attacked on the witness stand with his past, Am. Pet. at 25, is directly at odds with the appellate court's reasonable determination that Shull's intoxication at the time of the accident and his past history of alcohol abuse were proper areas of impeachment. Resp't Ex. H at 5–6. Accordingly, this Court cannot conclude that the state appellate court's conclusions were objectively unreasonable. Nor can the Court conclude that Shull's constitutional right to testify was violated. As the appellate court noted, a review of the trial transcript contradicts Shull's current contention. Resp't Ex. O at 3–4, ECF No. 11–23. Under oath, Shull affirmatively and clearly waived his right to testify and never informed the trial court that he wished to testify or was otherwise being coerced. *Id*. Accordingly, the Court concludes that the appellate court's conclusion was reasonable, and Shull's claim of coercion is meritless. *See Underwood v. Clark,* 939 F.2d 473, 475–76 (7th Cir. 1991) (stating that a "barebones" assertion by defendant, even under oath,

that his lawyer forbade him from testifying, without some other kind of substantiation, is insufficient to warrant further investigation into the claim). Because Shull has not shown that he was coerced, his trial counsel cannot have been ineffective in this instance.

### D. Whether Shull is entitled to a Certificate of Appealability

"A certificate of appealability may issue under paragraph (1) only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). A district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant. If the court denies a certificate, a party may not appeal the denial but may seek a certificate from the Court of Appeals under Federal Rules of Appellate Procedure 22. *See* Rule 11 of the Rules Governing § 2254 Cases in the United States District Courts. Seventh Circuit Rule 22(b) states: "In a habeas corpus proceeding in which detention complained of arises from process issued by a state court, or in a 28 U.S.C. § 2255 proceeding, the applicant cannot take an appeal unless a circuit justice or a district court judge issues a certificate of appealability under 28 U.S.C. § 2253(c)."

To obtain a certificate of appealability under § 2253, a habeas petitioner must demonstrate the denial of a constitutional right. This requires that the petitioner show that reasonable jurists could debate whether the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further. *Slack v. McDaniel*, 529 U.S. 473, 483–84 (2000). Where the district court has rejected the constitutional claims on the merits, the showing required to satisfy § 2253(c) is straightforward: the petitioner must demonstrate that reasonable jurists

would find the district court's assessment of the constitutional claims debatable or wrong. *Slack*, 529 U.S. at 484.

Denying the certificate of appealability as to claims dismissed on procedural grounds is more complicated. Typically, when a habeas petition is dismissed on procedural grounds, a district court can issue a certificate of appealability if the underlying issue of the violation of a constitutional right has not been reached. To be granted the certificate of appealability in this situation, the petitioner must show that jurists of reason could debate whether the petition states a valid claim of the denial of a constitutional right. *Id*. Shull must also show that jurists of reason could debate whether the district court was correct in its procedural ruling. *Id*. However, as is the case with respect to Claim One, where a plain procedural bar is present and a district court correctly invokes it to dispose of such a claim, a reasonable jurist could not conclude either that the Court erred in dismissing the petition or that the petitioner should be allowed to proceed further. *Id.*

Shull has failed to make a substantial showing of the denial of a constitutional right in his amended petition. The Court finds no basis for a determination that its decision to dismiss Shull's claims was debatable or incorrect. Shull's claims were dismissed because they were either procedurally defaulted, a ground which a reasonable jurist would not find debatable, or meritless. Accordingly, a certificate of appealability shall not issue.

**CONCLUSION**

For the aforementioned reasons, the Court DENIES Shull's Amended Petition seeking a writ of *habeas corpus* and DISMISSES WITH PREJUDICE all the of the

claims he raises as either procedurally defaulted, non-cognizable, or meritless. Shull is DENIED a certificate of appealability under 28 U.S.C. § 2253(c). The Court DIRECTS the Clerk of Court to enter judgment reflecting the same.

Entered this 30th day of September, 2014.

/s/ Sara Darrow
_____
Sara Darrow
U.S. District Judge